IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 97-10082
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICK WEBSTER,

Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Texas
(3:96-CR-291-1-T)

November 6, 1997

Before GARWOOD, JONES and STEWART, Circuit Judges.[*]

PER CURIAM:

Defendant-appellant Patrick Webster (Webster) appeals his guilty plea conviction for robbing an armored car in violation of the Hobbs Act, 18 U.S.C. § 1951(a) and 2. Webster argues two points on appeal. First, he argues that the indictment was defective because it did not allege that the robbery affected

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

*interstate* commerce. Second, he argues that his guilty plea is invalid because the factual resume did not show that his robbery affected interstate commerce. We affirm.

## Factual and Procedural Background

Webster was charged in a two-count indictment returned in August 1996. Count One charged robbery affecting commerce contrary to the Hobbs Act, and aiding and abetting same. Count Two charged use and carrying of a firearm in connection with the Hobbs Act offense, and aiding and abetting such, contrary to 18 U.S.C. §§ 924(c)(1) and 2. Webster, through counsel, filed several discovery motions and a motion to dismiss Count One of the indictment. The motion to dismiss Count One asserted that the indictment did not adequately plead an effect on interstate commerce, citing *United States v. Collins*, 40 F.3d 95 (5th Cir. 1994).[1] The district court overruled the motion to dismiss. Subsequently, Webster and the prosecutor entered into a written plea agreement and a document entitled "Factual Resume." Each was signed by Webster's attorney and by Webster personally. The plea agreement recites that Webster will plead guilty to Count One, which it describes as "robbery affecting interstate commerce" contrary to the Hobbs Act, and the

---

[1]Count One alleges in relevant part that Webster and others, aided and abetted by each other, "did obstruct, delay, and affect commerce and attempted to do so, by robbery, to wit: the defendants took and obtained, from the person and presence of Darrell Smith, employee of Armored Transport of Texas, Inc., United States currency, against his will, by means of actual and threatened force and violence and fear of injury to his person."

2

government will dismiss Count Two at sentencing and "recommend the lowest level of the guideline range determined applicable by the court."[2]  The factual resume, which the plea agreement says "is true and correct," states that on August 6, 1996, in the Dallas Division of the Northern District of Texas, Webster, Still, Wilson, and Washington

> "did knowingly and willfully *obstruct, delay and affect commerce* by taking from the person and presence of Darrell Smith, an employee of Armored Transport of Texas, United States currency, against Smith's will.  The currency was obtained by use of actual and threatened force and violence and fear of injury to the person of Darrell Smith.
>
> On or about August 5, 1996, WEBSTER met with Still and Wilson to plan the robbery of the armored car on August 6, 1996.  Still was employed by Armored Transport of Texas, Inc., as a driver and guard.  Still provided information as to where the robbery would occur and how to gain entry to the armored car.  According to information provided to agents of the Federal Bureau of Investigation by Still and Wilson, it was planned that a gun would be placed to the head of a second guard who would be in the armored car while Still faked resistance to the robbery.  The money gained from the robbery of the armored car was to be split among Still, WEBSTER and Wilson.
>
> On or about August 6, 1996, WEBSTER and Wilson gained entrance to the armored truck driven by Still by overpowering a second guard, Darrell Smith, at gunpoint. The armored car, along with Darrell Smith, was taken from the original scene of the robbery by Still, WEBSTER and Wilson.  Smith's eyes were taped and his hands were bound.  A nineteen minute police chase terminated when the armored car crashed into a residential fence and WEBSTER and Wilson fled on foot.  The armored car

---

[2]If convicted on Count Two, Webster would have faced a mandatory sentence of five years additional to any sentence imposed on Count One.  Section 924(c)(1).

3

contained approximately 1.2 million dollars in United States currency.

WEBSTER agrees that this Factual Resume is true and correct, except as it relates to Still and Wilson's contention that it was part of the original plan to use a gun during the robbery. WEBSTER maintains that he was not aware of the gun until the robbery occurred." (Emphasis added).

Subsequently, Webster was rearraigned and his guilty plea to Count One was accepted. At the rearraignment, the plea agreement was presented and summarized and Webster, who was twenty-seven years old and had one year of college, said he had read and signed it and discussed it with his attorney and understood all its provisions. The factual resume was then read aloud and Webster stated that it was correct.

Approximately six days later Webster filed an unverified pro se motion to withdraw his plea, arguing that his attorney had pressured him into entering into it, that the plea agreement did not contain what he had, prior to rearraignment, thought it would contain, and that "the representations of the factual resume are not fully true or correct." No specifics are asserted, and the motion is entirely conclusory. No mention is made of commerce or interstate commerce. No assertion of innocence is made. The district court denied the motion. Over two months thereafter, Webster, pro se, filed two further motions to withdraw his plea, urging that because the armored car guard, Still, was in on the offense, and had lawful custody of the money, and because Webster did not know a gun was going to be used on the other guard, Smith,

4

that there was no robbery as charged in the indictment, but rather merely embezzlement or larceny. No mention of commerce or interstate commerce is made or even hinted at in any of these motions.

At the subsequent sentencing hearing, Webster testified that Still, one of the two guards on the armored truck, was in on the plan to take the money from the armored car, and that although Smith, the other guard, was not, Webster did not believe a gun would be either needed or used. Webster admitted Smith carried a gun. Webster had driven an armored car for the same company. Webster also admitted that a firearm was in fact used by Wilson, one of the other participants. An FBI agent testified that another participant had told him that he had observed Wilson brandishing his gun in Webster's presence before the robbery. In his direct examination, Webster stated:

> "A. Well, one reason I think this is not a robbery, it's a [sic] embezzlement by theft.
> Q. Why do you say that?
> A. Because it was two security guards that was agents by the company, employed by the company, and both had a right to have -- they both had rights to have -- transport the money. And one security -- one security officer, he's deceived the company and the other security officer --"

Later on at the sentencing hearing, the following transpired:

> "THE COURT: All right. The court has also before it Mr. Webster's motion to withdraw his plea.
>
> Does Mr. Webster wish to address that?
>
> MR. HENDRICK [Webster's counsel]: Yes, Your Honor. We would -- I believe the court has previously denied Mr.

5

Webster's first motion to withdraw his plea. We have filed two additional motions basically arguing that the -- he's to be permitted to withdraw his plea because this offense was not a robbery. It was either a theft by deception or an embezzlement, and for those reasons, we reurge defendant's motion to be able to withdraw his plea.

THE COURT: All right. The court having previously accepted the defendant's plea finds that the defendant in this case has put forth no fair or just reason why the plea should be allowed to be withdrawn."

The PSR reflects that the armored car had been robbed "at the BankOne location at 112 South Garland Road in Garland, Texas," that the armored car contained $1,288,602 in United States currency, and that "[a]ll of the money was recovered, therefore, BankOne suffered no loss as a result of this robbery." Nothing in the record, or in the PSR, in any way suggests that Webster, either in person or through counsel, ever contended that either the factual resume, or the evidence or matter otherwise before the court, was insufficient to show the required nexus to interstate commerce, or ever contended that in point of fact such nexus was lacking. Nor does the record contain anything to suggest that in point of fact there was no such requisite nexus.

**Discussion**

1. *Indictment*.

Webster's argument, that the indictment was defective, is meritless. The indictment, like section 1951(a), referred to the robbery's effect on "commerce." Webster argues that this is an

6

insufficient indictment since a crime can only be a section 1951(a) offense if it affects *interstate* commerce.

While the robbery must affect interstate commerce in order to constitute a Hobbs Act violation, the indictment need not specifically use the term "interstate commerce." The term "commerce" alone is sufficient to charge a Hobbs Act violation. *See United States v. Gipson*, 46 F.3d 472, 474 (5th Cir. 1995), and *United States v. Parker*, 73 F.3d 48, 54-55 (5th Cir. 1996) (both upholding Hobbs Act indictments that alleged an interference with "commerce," rather than *interstate* commerce, and holding that "commerce," when used in a Hobbs Act indictment, covered *interstate* commerce). The Hobbs Act uses the term "commerce,"[3] but defines it to mean *interstate* commerce. *See* 18 U.S.C. § 1951(b)(3) (defining commerce to include only commerce within United States Territories and interstate commerce). *See also United States v. Williams*, 679 F.2d 504 (5th Cir. 1982). Since Webster's indictment tracks the language of the Hobbs Act, and thereby covers each *prima facie* element of the charge and notifies the defendant of the charge, we find that it is sufficient.

2. *Rule 11(f).*

Webster's sole remaining argument, that the district court erred by failing to require a showing that this robbery affected

---

[3]"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . . . ." 18 U.S.C. § 1951(a).

7

interstate commerce, is likewise without merit.  We read Webster's argument to be merely that reversible error is present because the factual resume, which was the only relevant rearraignment evidence other than the plea agreement, did not include any facts concerning the interstate effect of the robbery.

The contention that the factual resume did not contain any information that the robbery affected interstate commerce is being raised by Webster for the first time on appeal; this point, must, therefore, be reviewed for plain error.  *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 113 S.Ct. 1770 (1993). There is nothing to suggest that the omission from the factual resume of details on the robbery's connection to interstate commerce is other than a technical imperfection, which doubtless could easily have been remedied by the district court had Webster brought it to the court's attention in any of his three motions to withdraw his guilty plea.  Webster was fully aware of the nexus requirement under the Hobbs Act, as reflected by his citation below of *Collins*. And, *United States v. Lopez*, 115 S.Ct. 1624 (1995), had been decided for over a year.  Webster does not contend that in actual fact the required nexus to interstate commerce was lacking. Indeed, it is difficult to imagine that a $1,200,000 robbery from an interstate banking concern such as BankOne does not have the requisite nexus.  The *factual* resume states that Webster did "obstruct, delay and effect commerce by" the robbery, and the plea

8

agreement says that the robbery was one "affecting interstate commerce" and that the factual resume is correct. It is not clear that any error of the district court was "plain" or that it affects substantial rights. In any event, even assuming *arguendo* that error which is plain and affects substantial rights is present, in the instant context we choose to exercise our discretion not to correct this claimed error that is raised for the first time on appeal. *See Olano*, 113 S.Ct. at 1778 ("Rule 52(b) is permissive, not mandatory."); *United States v. Mmahat*, 106 F.3d 89, 95-96 (5th Cir. 1997) (same).

AFFIRMED